**MILWAUKEE TYPOGRAPHICAL UNION NO. 23, Petitioner,**

v.

**NEWSPAPERS, INC., Respondent.**

Civ. A. No. 79–C–649.

United States District Court,
E. D. Wisconsin.

Jan. 31, 1980.

Gilbert A. Cornfield, Chicago, Ill., for petitioner.

David W. Croysdale, Milwaukee, Wis., for respondent.

DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action brought pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for enforcement of an arbitrator's award made pursuant to the provisions of a collective bargaining agreement in effect between the petitioner Milwaukee Typographical Union No. 23 and the respondent Newspapers, Inc. The respondent has moved the court to dismiss the petition on the ground that the arbitrator's award exceeded his authority and is unenforceable. For the following reasons, the motion will be denied.

Paragraph five of Section 4 of the collective bargaining agreement provides:

"In the event of the introduction into Composing Room work of any process, machinery or equipment which functions as a substitute for, or evolution of, the typesetting and typecasting processes that were in use at the date this contract became effective, all questions concerned with the method of operation, the complement of men required or the retraining of affected employes shall be determined by

the Joint Standing Committee, which shall give due consideration to priority with regard to any question of retraining presented to it."

Section 7 of the agreement provides in part:

" * * * To this [Joint Standing] committee shall be referred all questions that may arise regarding this contract or any alleged violation thereof, which cannot be settled otherwise. * * * If the committee does not reach an agreement within fifteen (15) days of the date of transmission of notice of difference, the questions in dispute shall, on request of either party to the agreement, be submitted to arbitration * * *. * *"

The petitioner represents employes in respondent's Composing Room; it does not represent other of respondent's employes. Sometime in 1976, the respondent introduced certain technological changes into its Editorial Department which had an undisputed impact on the work performed in the Composing Room. Petitioner filed a grievance relating to the impact on the job elements in the Composing Room caused by said change. On March 29, 1979, Arbitrator Carl A. Warns, Jr., issued a decision upholding the respondent's right to make the technological changes, but concluding:

"2. I find, however, that the introduction of the Hendrix system, a technological change, has sufficient impact on the job elements of the Composing Room as to warrant the imposition of a duty to bargain about such impact.

"3. The parties are directed to bargain in good faith according to the guidelines of Sections 8(a)(5) and 9(b)(3) of the National Labor Relations Act, As Amended. If the parties are unable to reach agreement within 60 days of the receipt of this Award, the matter shall be returned to a mutually selected Arbitrator, or if none can be agreed upon, to this Arbitrator for a specific ruling. This ruling shall be made within 30 days of the close of the hearing."

The respondent argues that having found no contract violation, the arbitrator was not free to impose a remedy for what he perceived as an inequity in the existing contract where the contract itself did not allow for such remedy. See, e. g., *City Electric, Inc. v. Local Union 77, International Brotherhood of Electrical Workers,* 517 F.2d 616 (9th Cir. 1975), cert. denied 423 U.S. 894, 96 S.Ct. 194, 46 L.Ed.2d 127, holding that an arbitrator may deal only with what exists in a contract and may not bring in ad hoc modifications. The respondent also argues that the third paragraph of the award is an interest arbitration provision of the type found to be impermissible in *Milwaukee Newspaper & Graphic Communications Union Local No. 23 v. Newspapers, Inc.,* 586 F.2d 19 (7th Cir. 1978), cert. denied 440 U.S. 971, 99 S.Ct. 1534, 59 L.Ed.2d 787 (1979). Finally, the respondent argues:

"The fatal flaw in Petitioner's argument is the claim that the 'new process' clause [paragraph five of Section 4], which relates *only* to new technology in the *composing room,* also applies to technological change introduced into *other departments* of the Employer. Of equal importance is the fact that the 'new process' clause does not relate to the impact on the *composing room* of technology used in *other departments.* Instead, this clause requires arbitration with respect to only three narrowly defined questions: 'the method of operation, the complement of men required or the retraining of affected employees' arising from new *composing room* technology. Therefore, the 'new process' clause cannot be construed to require negotiation or arbitration over the impact *on the composing room* of technology in *other departments* of the Employer." (Emphasis in original.) (Respondent's reply brief filed December 11, 1979, at p. 3.)

*United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960), states:

" \* \* \* the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."

Arbitrator Warns found that the contract between petitioner and respondent did not prevent the respondent from introducing technological changes into its Editorial Department even if those changes had an impact on the Composing Room. He also found, however, that the correct interpretation of paragraph five of Section 4 of the contract is not the interpretation argued for by the respondent and set forth above but rather:

" \* \* \* I also agree with the Union that the words 'Composing Room,' historically understood, do not necessarily imply that the defined jurisdiction of the Composing Room and the Joint Standing Committee regarding changes are limited to a prescribed physical area. 'Function and purpose' emphasized by the Company, are utilitarian, to be viewed in the context of the practical setting in which they apply. Section 4 is more than a listing of unit classifications—the words 'in the event of the introduction into Composing Room work of any process, machinery or equipment which functions as a substitute for, or evolution of, the typesetting processes that were in use . . . ' delegates to the Joint Standing Committee the responsibility of accommodating Management's legitimate right and responsibility to keep abreast of new developments in order to survive in the marketplace with the right of the members of the bargaining unit to maintain their productive role in the enterprise and to support their families." (Arbitrator Warns' decision at p. 12.)

The respondent concedes that the contract requires negotiation or arbitration over the method of operation, the complement of men required, or the retraining of affected employees arising from new Composing Room technology. What constitutes "new composing room technology" is a matter of contract interpretation for the arbitrator and not for this court to decide. Once having decided that technological change in the Editorial Department was included within the spirit of that phrase, Arbitrator Warns was entitled to impose the remedy provided for in the contract when such change occurred.

The respondent points out that in making his award, Arbitrator Warns relied in part on certain policies of the Labor Management Relations Act and on the decisions of other arbitrators in similar actions, rather than basing his award solely on the language of the contract at issue. Again, as stated in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, supra, however, at 597–598, 80 S.Ct. at 1361:

" \* \* \* an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

"The opinion of the arbitrator in this case \* \* \* is ambiguous. It may be read as based solely upon the arbitrator's view of the requirements of enacted legislation, which would mean that he exceeded the scope of the submission. Or it may be read as embodying a construction of the agreement itself, perhaps with the arbitrator looking to 'the law' for help in determining the sense of the agreement. A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for

refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions. This would be undesirable for a well-reasoned opinion tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement. Moreover, we see no reason to assume that this arbitrator has abused the trust the parties confided in him and has not stayed within the areas marked out for his consideration. * * * "

Finally, the case of *Milwaukee Newspaper & Graphic Communications Union Local No. 23 v. Newspapers, Inc.*, supra, is not on point. In that case the Court held only that a union cannot insist to impasse during bargaining on the inclusion of an interest arbitration clause in a new contract. It did not hold that when such a clause is included in an existing contract, a party may be excused from complying with it.

For the foregoing reasons,

IT IS ORDERED that the motion of the respondent Newspapers, Inc., to dismiss the petition for enforcement of an arbitration award is denied.

IT IS FURTHER ORDERED that the petition for enforcement is granted, and that the respondent Newspapers, Inc., is to comply forthwith with paragraph 3 of the arbitration award of Arbitrator Carl A. Warns, Jr., issued March 29, 1979.